13599

PRIMUS v. ATLANTIC COAST LINE R. CO.

(171 S. E., 1)

*Messrs. McKay & Manning* and *Thos. W. Davis,* for appellant,

*Messrs. W. M. Hawes, James S. Verner* and *A. F. Spigner,* for respondent,

March 13, 1933.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, commenced in the Court of Common Pleas for Richland County, April 20, 1931, by Janie Primus, as administratrix of the estate of Noah Primus, deceased, against the defendant, Atlantic Coast Line Railroad Company, is a suit for damages on account of the death of the said deceased, alleged to have been caused by the wrongful acts of the defendant, while in the employment of defendant and engaged in the performance of his duties as a crossing flagman at Green Street crossing in the City of Columbia, said State of South Carolina. The action was brought under the Federal Employers' Liability Act (45 U. S. C. A. §§ 51–59). In its answer the defendant set up a general denial, and also interposed the pleas of contributory negligence and assumption of risk. The case was tried at the December, 1931, term of said Court before Judge C. C. Featherstone and a jury, resulting in a verdict for the plaintiff in the sum of $2,500.00. From judgment entered on the verdict, pursuant to due notice, the defendant has appealed to this Court.

The allegations of error imputed to the trial judge are based upon his Honor's refusal to grant defendant's motion for direction of a verdict, and also upon certain portions of his Honor's charge.

The pertinent allegations of fact alleged by the plaintiff, briefly stated, are as follows:

The defendant, Atlantic Coast Line Railroad Company, as a common carrier, owns, operates, and controls a line of railway extending from Wilmington, N. C., through and beyond the City of Columbia, S. C., together with certain locomotives, trains, etc., and at the time in question used same in intrastate and interstate transportation; that one of the railroad tracks of the said railroad so used by the defendant crosses Green Street in the said City of Columbia, "at a point at which the defendant keeps and maintains a watchman for the purpose of warning the traveling public of the approach of trains and locomotives used by the defendant in the transaction of its business; that at a point where the said Green Street intersects the said defendant's line of railroads the defendant maintained, and used, and now maintains and uses, certain spur or side tracks which run parallel with defendant's main track at that point, said spur tracks being used by defendant for the switching of cars; that on or about the 23rd day of October, 1930, the plaintiff's intestate, Noah Primus, was employed by the defendant herein as a watchman at said crossing, his duties being to keep a watchout for approaching trains and to warn the traveling public by signalling as, and when, any train or locomotive was approaching said crossing, and on said date and while the plaintiff's intestate was so engaged in flagging and protecting the traveling public from injury by a certain train of cars then being used in the transportation of both intrastate and interstate freights which was then approaching or had just crossed said Green Street, on one of the main line of railroad at that point, which railroad tracks were used by the defendant in the transportation of both intrastate and interstate commerce, he was run into, over and killed by a string of freight cars in charge of and operated by defendant's agents and servants, and which cars were then being used at the time in the transportation of intrastate and interstate freight."

No question is involved as to the appointment of the administratrix of said estate, nor for whose benefit the action was instituted.

The following were the special allegations of negligence set forth by the plaintiff:

"That the death of the said Noah Primus was due to, and brought about by carelessness, negligence, wilfulness and wantonness of the defendant Atlantic Coast Line Railroad Company, its agents and servants in that:

"(a) The agents and servants of the defendant Company in charge of, and engaged in the running and operating of a locomotive and string of freight cars along and over said spur tracks, which are parallel to the defendant's main line of railway where the same crosses the said Green Street, in the City of Columbia, State of South Carolina, were pushing the said string of cars behind one of the defendant's locomotives without having at the front end of said string of cars any flagman, brakeman, watchman or other servant to warn plaintiff's intestate and the traveling public of the approach of said string of cars and locomotive as required by the rules of the defendant Company and the ordinances of the City of Columbia.

"(b) In that the agents and servants of the defendant Company in charge of said string of freight cars and locomotive failed and refused to provide a light, or other signalling device, on the front end of said string of cars to warn plaintiff's intestate and the traveling public of the approach of said string of cars and locomotive as required by the rules of the defendant Company, and the ordinances of the City of Columbia.

"(c) In that the defendant's servants and agents in charge of the operating of said string of cars and locomotive failed and refused to blow the whistle or ring the bell as required by the statute laws of the State of South Carolina, and the ordinances of the City of Columbia, as the said train approached the said crossing·

"(d) In that the said defendant, its agents and servants, were operating said string of cars and locomotive at an excessive rate of speed in violation of the ordinances of the City of Columbia, and without keeping an observation or watch along and over the track on which said train was backing for the purpose of observing and warning anyone who might be on the track in front of the said string of cars or approaching the same."

Appellant's exceptions, I and II, reading as follows, will be considered together:

"1. The trial Court erred in refusing to direct a verdict for the defendant since there was not sufficient evidence of actionable negligence to warrant the cause being submitted to the jury, the evidence being clear that the train was backed slowly over the crossing, in a shifting movement and struck plaintiff's intestate who was a watchman employed at the crossing to protect same when he knew or by the exercise of slight care he should have known of the car's approach whether or not in yard limits.

"2. The trial Court erred in refusing to direct a verdict for the defendant, since there was not sufficient evidence of actionable negligence to warrant the submission of the issues to the jury, it being clear that the plaintiff's intestate was engaged in his customary employment as a crossing watchman on and near the tracks and not under the circumstances entitled to warning of an usual shifting movement."

In the course of the trial his Honor, the trial Judge, ruled that, the case having been brought under the Federal Employers' Liability Act, the statutory law of this state, requiring certain signals to be given at crossings and also the city ordinances of the City of Columbia, mentioned in Paragraphs C and D of the complaint, were not applicable. Therefore the case was submitted to the jury based on common-law negligence. There is no appeal from this ruling, and therefore no further reference need be made to the signal statutes and the city ordinances.

Regarding Exceptions I and II, quoted above, involving the testimony in the case, under our view it would serve no useful purpose to review at length the testimony adduced at the trial, but deem it sufficient to make a brief reference to the same.

It is conceded that at the time of the death of the deceased he was in the employment of the defendant, and there was testimony from which it may be reasonably inferred that he was at the time of his death actually engaged as such employee in the discharge of his duties, as flagman at the crossing of Green Street in the City of Columbia, where he was employed by the defendant to flag the said crossing where the defendant and one other railroad have parallel tracks of railroad; and at said point, in addition to the main line of the two railroad companies, there were also side tracks used by the defendant. Another reasonable inference to be drawn from the testimony adduced at the trial is that the deceased was run over and killed by certain freight cars of the defendant which were being pushed by defendant's locomotive along a side track of the defendant's said railroad at the point in question; that the deceased was killed about 7:45 p. m., on the date alleged in the complaint, October 23, 1930, which was the early part of the night, and that the defendant had no one on the freight car of the said train that struck the deceased, riding on the back end of the car, for the purpose of keeping a lookout and to protect any one who might be on the side crossing. Another reasonable inference to be drawn from the testimony is that there was no light on the car which ran over the deceased, although it was after night, and that one of the purposes of the deceased being at the place at the time in question was to protect the public from the trains passing at that place. While there was evidence presented by the defendant to the effect that, at the time the defendant's train struck the deceased, resulting in the death of the deceased, the bell on the locomotive was ringing, there was

testimony by witnesses on behalf of the plaintiff that they did not hear the bell ringing, although they claimed to be near the scene in question. Therefore, whether the bell on the locomotive, pushing the freight cars in question, was ringing, was, under the testimony, an issue for the jury. In this connection we also call attention to Rule 24 of the defendant, reading as follows: "When cars are pushed by an engine, except when shifting or making up trains in yards, a white light must be displayed on the front of the leading car by night."

It clearly appears from the testimony that there was no light on the front of the leading car in question at the time the plaintiff's intestate was killed. We may state also in this connection that more than one reasonable inference can be drawn from the testimony as to whether the car that struck the deceased, resulting in his death, was at the time in the "yards" of the defendant or at a public crossing. There was, also, testimony to the effect that the train in question that struck the deceased, causing his death, was in reverse movement, and, under the circumstances, the deceased could have been, and evidently was, struck suddenly and unaware. There was also other testimony bearing on the material facts involved, but we do not consider it necessary to review or discuss the testimony further. It is our opinion, after a careful consideration of the same, as a whole, that his Honor, the trial Judge, properly overruled the motion for a direction of a verdict. It was, under the law governing such cases, the duty of the defendant, under the circumstances, to exercise ordinary care to prevent injury to the deceased at the time and place in question. Whether the defendant complied with this obligation and performed this duty was, under the testimony, an issue for the jury. While, as ruled by his Honor, the jury could not take into consideration the city ordinances or the crossing statute of this State, requiring certain signals to be given, under the common-law rule governing the trial of the case

it was for the jury to say whether or not the defendant gave the necessary signals required under the circumstances and exercised the degree of care required under the circumstances, for the protection of the said servant and employee at the time and place in question.

Under the appellant's third exception, reading as follows, a question is raised as to assumption of risk: "The trial Court erred in refusing to direct a verdict for the defendant since the only reasonable inference to be drawn from the testimony was that he was an experienced watchman, engaged in protecting, shifting and all train movements over the crossing in question and was apprised and aware of the method and manner of shifting at that place and assumed all risk of same, the evidence showing that the movement on this occasion was made in the usual way."

The deceased, as an employee of the defendant, under the well-recognized rule, assumed the ordinary risks incident to his employment, but he, of course, did not, under the law, assume extraordinary risks; neither did he assume risks resulting from the negligence of the defendant in failing to perform its duty under the circumstances, if there was such failure, unless the deceased had knowledge of such risks or pending dangers, or unless such dangers were so obvious that a person of ordinary prudence would, under the circumstances, be presumed to have knowledge of the same. We are unable to agree with appellant's position stated under this exception, but think that this issue was an issue to be submitted to the jury.

Exception IV: "The trial Court erred in refusing the defendant's fourth request as follows:

" 'I charge you that if you find Primus came to his death while shifting cars were operated in the usual manner, whether in violation of rule or not, he assumed the risk and cannot recover.'

"This being a proper request since an employee engaged in work in the yards and/or at crossings to protect same as-

sumes the risk of usual operations and is not entitled to warnings by signal or otherwise unless he is discovered in a position of peril and oblivious thereof."

The request to charge did not comply with the rule expressed in our discussion of Exception III. The request did not go far enough, and, in our opinion, his Honor committed no error in refusing to charge the same.

Exceptions V and VI: "The trial Judge erred in submitting to the jury the question of whether this accident occurred within the yard limits and hence the determination of whether under Rule 24 a trainman should have been on the front of the leading car, since the only reasonable inference to be drawn from the evidence was that the accident occurred within the yard limits and the Court should have held the rule inapplicable."

"The trial Judge erred in submitting the applicability of Rule 103 to the jury at all since the only reasonable inference to be drawn was that plaintiff's intestate was there to protect the crossing which under its provisions negatived the rule."

The rules referred to in these exceptions read as follows:

"Rule 24. When cars are pushed by an engine except when shifting or making up trains in yards, a white light must be displayed on the front of the leading car by night."

"Rule 103. When cars are pushed by an engine except when shifting or making up trains in yards, a trainman must take a conspicuous position on the front of the leading car and when shifting over public crossings at grade not protected by a watchman, a member of the crew must protect the crossing."

As stated in our consideration of Exceptions I and II, more than one reasonable inference can be drawn from the testimony as to where the accident occurred; that is, whether within the yard limits of the defendant or at a public crossing of the defendant's said railroad. There was testimony

from which it might be inferred that the defendant's railroad yard included public crossings in said city, including the said Green Street crossing. There was also testimony to the effect, or at least from which it might be reasonably inferred, that the duties of the deceased as flagman or watchman at the said Green Street crossing, for the purpose of flagging trains and protecting the public, were limited to the crossing; that he had no duties within the yard, and, further that the death of the said deceased occurred at the said crossing while in the discharge of his duties as such employee. The trial Judge committed no error in permitting the introduction of the said rules.

A careful consideration of the entire record in the case convinces us that a fair and impartial trial was given the defendant. The exceptions must therefore be overruled, and it is the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.